# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Dustin Shirley, *on behalf of himself and others similarly situated*, | Case No. 2:21-cv-13007-SFC-KGA |
| Plaintiff, | Hon. Judge Sean F. Cox<br>U.S. District Judge |
| v. | Hon. Kimberly G. Altman<br>U.S. Magistrate Judge |
| Rocket Mortgage, LLC, | **ORAL ARGUMENT** |
| Defendant. | **REQUESTED** |

## ROCKET MORTGAGE, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT

In his Complaint, Plaintiff Dustin Shirley ("Plaintiff" or "Shirley") alleges that Rocket Mortgage, LLC ("Rocket Mortgage") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by texting his cellphone while his phone number was on the National Do-Not-Call Registry.  Rocket Mortgage moves to compel Shirley's claim to arbitration and dismiss the Complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, because it is subject to binding and enforceable arbitration agreements.[1]

The grounds for this Motion are set forth in the accompanying Memorandum of Law.  Pursuant to Local Rule 7.1(a), Rocket Mortgage's undersigned counsel

---

[1] Without prejudice to this Motion, Rocket Mortgage also has contemporaneously moved to dismiss Shirley's claim pursuant to Fed. R. Civ. P. 12(b)(6).

certifies that he conferred with counsel for Plaintiff, explaining the nature of the relief to be sought by this Motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

Respectfully submitted,

/s/ *W. Kyle Tayman*

W. Kyle Tayman
Brooks R. Brown
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com

Jeffrey B. Morganroth (P41670)
jmorganroth@morganrothlaw.com
MORGANROTH AND MORGANROTH PLLC
344 North Old Woodard Avenue, Suite 200
Birmingham, MI  48009
Tel.: +1 248 864 4000
Fax: +1 248 864 4001

*Counsel for Rocket Mortgage, LLC*

Dated:  February 28, 2022

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Dustin Shirley, *on behalf of himself and others similarly situated*, | Case No. 2:21-cv-13007-SFC-KGA |
| Plaintiff, | Hon. Judge Sean F. Cox <br> U.S. District Judge |
| v. | |
| Rocket Mortgage, LLC, | Hon. Kimberly G. Altman <br> U.S. Magistrate Judge |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>ROCKET MORTGAGE, LLC'S MOTION TO COMPEL ARBITRATION</u>**

## TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ....................................................................... vii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. viii

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................. 2

    I.   ROCKET MORTGAGE AND LMB ARE AFFILIATED COMPANIES. ............. 2

    II.  ON AUGUST 15, 2021, PLAINTIFF AGREED TO ARBITRATE ANY CLAIMS AGAINST ROCKET MORTGAGE. ................................................. 3

    A.  LMB's Consent Language and Terms of Use. ........................... 3

    B.  Rocket Mortgage's Terms of Use. ........................................ 7

    III.  THE LAWSUIT ............................................................. 8

LEGAL STANDARD ....................................................................... 8

ARGUMENT ................................................................................ 9

    I.   THE LMB TERMS OF USE CONSTITUTE A VALID ARBITRATION AGREEMENT THAT REQUIRES PLAINTIFF TO ARBITRATE (NOT LITIGATE) THE TCPA CLAIMS HE PURPORTS TO PURSUE IN THIS LAWSUIT. .............. 10

    A.  Acknowledging An Agreement Forms A Contract. ........................... 11

    B.  Plaintiff Twice Affirmatively Agreed to LMB's Terms of Use After Being on Inquiry Notice of Them. ........................................ 11

    C.  Rocket Mortgage Is Entitled To Enforce the LMB Terms of Use. ..... 15

    D.  While the Issue is Expressly Reserved to the Arbitrator, Shirley's Dispute Does Not Fall Outside the Arbitration Agreement. ..................... 19

    II.  THE ROCKET MORTGAGE TERMS OF USE CONSTITUTE A VALID ARBITRATION AGREEMENT WITH PLAINTIFF THAT ALSO REQUIRE HIM TO ARBITRATE (NOT LITIGATE) THE TCPA CLAIMS HE PURPORTS TO PURSUE IN THIS LAWSUIT. ...................................................... 21

CONCLUSION ............................................................................. 24

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Amazon.com, Inc.*,
  490 F. Supp. 3d 1265 (M.D. Tenn. 2020) ..............................................11, 22, 23

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..........................................................................................1, 8

*Blanton v. Domino's Pizza Franchising LLC*,
  No. 18-13207, 2019 WL 5543027 (E.D. Mich. Oct. 25, 2019),
  *aff'd*, 962 F.3d 842 (6th Cir. 2020) ...................................................................9, 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ........................................................................20, 21

*Chrysler Corp. v. Skyline Indus. Servs., Inc.*,
  528 N.W.2d 698 (Mich. 1995) .............................................................................21

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) .............................................................................19

*Currithers v. FedEx Ground Package Sys., Inc.*,
  2012 WL 458466 (E.D. Mich. Feb. 13, 2012) .......................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ...............................................................................................9

*Ege v. Express Messenger Sys. Inc.*,
  745 F. App'x 19 (9th Cir. 2018) .....................................................................17, 18

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..................................................................22

*Gilbert v. Bank of Am.*,
  No. 13-01171, 2015 WL 12953229 (N.D. Cal. Jan. 12, 2015) ...........................15

*Graf v. Match.com, LLC*,
  No. 15-3911, 2015 WL 4263957 (C.D. Cal. July 10, 2015) .........................14, 15

*Hajibekyan v. BMW of N. Am., LLC*,
   839 F. App'x 187 (9th Cir. 2021) .......................................................16

*Hearing Consultants v. J2 Glob. Commc'ns*,
   No. 14-3540, 2015 Mich. Cir. LEXIS 133 (Mich. Cir. Ct. Dec. 26,
   2015) ..................................................................................................22

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)..................................................................20, 23

*Hergenreder v. Bickford Senior Living Grp., LLC*,
   656 F.3d 411 (6th Cir. 2011) .............................................................10

*Hill v. ActiveProspect, Inc.*,
   No. 20-01351 (C.D. Cal. July 16, 2021), ECF No. 90 .......................12

*Hubbert v. Dell Corp.*,
   835 N.E.2d 113 (Ill. App. Ct. 2005) .................................................22

*Jones-Bey v. JPay Inc.*,
   No. 17-12545, 2019 WL 6337770 (E.D. Mich. Oct. 10, 2019),
   *report and recommendation adopted*, No. 17-12545, 2019 WL
   6329666 (E.D. Mich. Nov. 26, 2019)...........................................10, 11

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ....................................................15, 18

*Labajo v First Int'l Bank & Tr.*,
   No. 14-00627, 2014 WL 4090527 (C.D. Cal. July 9, 2014) ..............17

*Lazo v. Redcliffe Med. Devices, Inc.*,
   No. 21-10336, 2021 WL 5536319 (E.D. Mich. Oct. 18, 2021) ..........11

*Lei v. Amway Corp.*,
   No. 14-04022, 2014 WL 12596787 (C.D. Cal. July 23, 2014) ..........16

*Mohamed v. Uber Techs., Inc.*,
   109 F. Supp. 3d 1185 (N.D. Cal. 2015), *aff'd in part, rev'd in part,
   remanded*, 836 F.3d 1102 (9th Cir. 2016) ...................................13, 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...........................................................................9, 21

iv

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ...........................................................16

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...............................................11, 13, 14

*Nguyen v. Tran*,
    68 Cal. Rptr. 3d 906 (Cal. Ct. App. 2007) ........................................15

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ..........................................14, 15

*Rodriguez v. Experian Servs. Corp.*,
    No. 15-03553 (C.D. Cal. Oct. 5, 2015), ECF No. 43 .........................12

*In re StockX Customer Data Sec. Breach Litig.*,
    19 F.4th 873 (6th Cir. 2021) ................................................................2

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ...............................................................9

*Sun Moon Star Advanced Power, Inc. v. Chappell*,
    773 F. Supp. 1373 (N.D. Cal. 1990) ..................................................16

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
    10 F.3d 753 (11th Cir. 1993), *rehearing & rehearing en banc
    denied*, 20 F.3d 1176 (11th Cir. 1994) ..............................................18

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995) ................................................................19

*Tillman v. Macy's, Inc.*,
    735 F.3d 453 (6th Cir. 2013) .............................................................23

*Tompkins v. 23andMe, Inc.*,
    No. 13-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*,
    840 F.3d 1016 (9th Cir. 2016) ...........................................................14

**Statutes**

9 U.S.C. § 2 ........................................................................................8

9 U.S.C. § 4 ........................................................................................1

47 U.S.C. § 227(c)(5)..............................................................................1, 8

**Other Authorities**

47 C.F.R. § 64.1200(c)(2)..........................................................................8

Affiliate Definition, *Black's Law Dictionary* (10th ed. 2014)................................17

## ISSUE PRESENTED

(1)    Should this Court compel Plaintiff's claims to arbitration and/or dismiss Plaintiff's claims because Plaintiff agreed to arbitrate his claims in accordance with his binding agreements with Rocket Mortgage and LMB Mortgage Services, Inc. d/b/a LowerMyBills.com?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1) *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)

2) *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873 (6th Cir. 2021)

3) *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411 (6th Cir. 2011)

4) *Hearing Consultants v. J2 Glob. Commc'ns*, No. 14-3540, 2015 Mich. Cir. LEXIS 133 (Mich. Cir. Ct. Dec. 26, 2015)

5) *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014)

6) Order Granting Defendants' Motion to Compel Arbitration, *Rodriguez v. Experian Servs. Corp.*, No. 15-03553 (C.D. Cal. Oct. 5, 2015), ECF No. 43

7) *Graf v. Match.com, LLC*, No. 15-3911, 2015 WL 4263957 (C.D. Cal. July 10, 2015)

8) *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013)

9) *Hubbert v. Dell Corp.*, 835 N.E.2d 113 (Ill. App. Ct. 2005)

10) *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265 (M.D. Tenn. 2020)

11) *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x 187 (9th Cir. 2021)

## <u>INTRODUCTION</u>

Plaintiff Dustin Shirley brings this suit against Rocket Mortgage—a multiple J.D. Power award winner for customer service in mortgage loan origination and servicing—for alleged violations of the do-not-call regulations of the TCPA, 47 U.S.C. § 227(c)(5). Plaintiff's claim should be compelled to arbitration and dismissed pursuant to the FAA because it is subject to two different binding and enforceable arbitration agreements.

The Complaint identifies three text messages (and only three) Plaintiff allegedly received between November 23 and November 29, 2021. Compl. ¶¶ 17, 19. The record evidence Rocket Mortgage submits with this Motion demonstrates that these texts were sent in response to Shirley's online submission of his contact information and consent to receive text messages as part of his request for mortgage refinance information from Rocket Mortgage (and others). As part of that submission, Shirley repeatedly agreed, among other things, to arbitrate all claims against Rocket Mortgage arising out of his submission. Shirley violated those agreements by filing this lawsuit against Rocket Mortgage. Pursuant to well-established Sixth Circuit precedent and the FAA, 9 U.S.C. § 4, this Court should foreclose that violation, enforce the agreement, and compel Shirley's individual claim to arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339

(2011); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021).

## BACKGROUND

### I.   ROCKET MORTGAGE AND LMB ARE AFFILIATED COMPANIES.

As part of its residential mortgage business, Rocket Mortgage contacts individuals who have expressed an interest in learning more about its mortgage products and consented to being contacted.  While many of these individuals come to Rocket Mortgage directly (through RocketMortgage.com or by calling the Company's direct-line), others express their interest and provide their consent to be contacted by Rocket Mortgage through a variety of channels, including websites run by its affiliate LMB Mortgage Services, Inc. d/b/a LowerMyBills.com ("LMB"). Courtney Decl. ¶ 3.  LMB and Rocket Mortgage share the same parent company, RKT Holdings, LLC.  Viner Decl. ¶ 4; Courtney Decl. ¶ 3.

LMB operates a free online service for consumers seeking home mortgage and refinance loans at its website, LowerMyBills.com.  Viner Decl. ¶ 4.  For consumers (like Plaintiff) who navigate to this website and voluntarily enter various pieces of information about themselves—such as their property address, phone number, e-mail address, estimated home value, current interest rate, and amount of debt—LMB will match and refer consumers to Rocket Mortgage and other mortgage loan providers.  *Id.*  To avail themselves of this free referral service, consumers visiting the site in August 2021 (like Plaintiff) had to, among other things, first agree

to be bound by both LMB's Terms of Use and Rocket Mortgage's Terms of Use. *Id.* ¶ 6.  LMB's Terms of Use provide for, among other things, mandatory arbitration of all claims, disputes, and controversies with LMB and its affiliates arising from or relating to the use of LMB's services, including claims alleging violation of the TCPA.  *Id.* Ex. 2 ¶ 2.  Rocket Mortgage's Terms of Use similarly provide for mandatory arbitration of all claims, disputes, and controversies with Rocket Mortgage relating to the TCPA.  Courtney Decl. Ex. 1 p. 12.

## II. ON AUGUST 15, 2021, PLAINTIFF AGREED TO ARBITRATE ANY CLAIMS AGAINST ROCKET MORTGAGE.

According to public records, Plaintiff owns a home at 9208 Pepper Grass Drive, Fort Worth, Texas 76131 (the "Property").  Tayman Decl. Ex. 1.  On August 15, 2021 Plaintiff visited LowerMyBills.com seeking mortgage refinance information for the Property.  Viner Decl. ¶ 9.  Plaintiff entered his information, including his name, email address, the telephone number 817-507-7546, and the address 9208 Pepper Grass Drive, Fort Worth, TX 76131.  *Id.*  The telephone number Plaintiff entered into the website has the same first three (817) and last four digits (7546) as the telephone number that Plaintiff alleges in his Complaint belongs to him.  Compl. ¶ 15.

### A. LMB's Consent Language and Terms of Use.

To complete his online request for refinance information at LowerMyBills.com, Plaintiff filled out information on five distinct pages.  LMB's

3

disclosures, Terms of Use, and Privacy Policy were presented to Plaintiff multiple times during this process.  Viner Decl. ¶¶ 12, 15-19, 22.  On the fourth page, after typing in personal information including his property address and email address, Plaintiff clicked a submission button labeled "Calculate."  *Id.* ¶¶ 14-15.  Displayed immediately below that button was an express disclosure that "[b]y clicking the button above, you agree to be contacted by LowerMyBills, at the address entered above for promotional emails *and consent, electronically via E-sign, to the LMB Lending* **_Terms of Use_**, **Privacy Policy**, and Consent to Doing Business Electronically."  *Id.* ¶ 15 (emphasis added).[2]  The phrase "Terms of Use"  was a hyperlink that was underlined and appeared in blue text.  *Id.* ¶ 16.  Clicking on the words "Terms of Use" took the consumer to LMB's complete Terms of Use, enabling the consumer to review them before clicking the "Calculate" button to agree to them.  *Id.*

On the next page, Plaintiff typed in additional personal information, including his cell phone number.  Immediately below the phone number box where he did so was disclosure language stating:  "Enter your phone number above to receive automated and/or pre-recorded calls only from us and/or the providers that are matched to you."  *Id.* Ex. 1 p. 15.  Below this disclosure, Plaintiff clicked "Calculate

---

[2] Displayed below this language was the text:  "Featured Provider Quicken Loans" (now known as "Rocket Mortgage").  *Id.* ¶ 16.

your FREE results" button.  *Id.* ¶ 17.  Immediately below that button was a disclosure

informing Plaintiff that "[b]y clicking the button above, you express your

understanding and consent, electronically via E-sign," to the following:

> 1. To be matched with, and contacted by, up to 5 participants in the
>    **LMB Provider Network** about mortgage and financial services
>    products, and consent (not required as a condition to purchase a
>    good/service) for us and them to contact you for marketing
>    purposes . . . via telephone or text at the phone number provided
>    above (including SMS and MMS), and email, *even if you are on
>    a corporate, state or national Do Not call
>    Registry*.  You may revoke your consent at any time. . . . As an
>    alternative, you may contact us by email at
>    customercare@coredigital.com"
>
> 2. To the LMB Lending **Terms of Use**, **Privacy Policy**, and
>    Consent to Doing Business Electronically.

*Id.* ¶ 18 (emphasis added).  The words "LMB Provider Network" were hyperlinked

to a list identifying Rocket Mortgage as one of the lenders in the "LMB Provider

Network."  *Id.* ¶ 22.  The phrase "Terms of Use" was also a hyperlink that was

underlined and appeared in blue text.  *Id.* ¶ 19.  Again, clicking on the words "Terms

of Use" took the consumer to LMB's full-text Terms of Use, which the consumer

could again review, before clicking the "Calculate your Free Results" button to

confirm agreement to them.  *Id.* ¶ 20.  Thus, by clicking the "Calculate" button and

the "Calculate your FREE results" button to use LMB's free service, Plaintiff twice

agreed to LMB's Terms of Use setting forth "the terms and conditions applicable to

[his] use of the LMB Website and the products and services provided through or in

connection with the LMB Website." *Id.* Ex. 2 p. 1.

As relevant to this Motion, one of the express terms and conditions in LMB's Terms of Use to which Plaintiff twice agreed was a mandatory arbitration provision. That arbitration provision provided as follows:

> 2. **ARBITRATION.** YOU UNDERSTAND AND AGREE THAT **ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES**, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, **CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION**, AND THE ISSUE OF ARBITRABILITY, **SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION** AT A LOCATION TO BE DETERMINED BY THE ARBITRATOR. **ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT**. . . . **NEITHER YOU NOR LMB SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CONSUMERS OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS** OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES **VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL**.

*Id.* ¶ 21 & Ex. 2 ¶ 2 (emphases added). These terms were clearly presented in all capital letters to highlight their importance.

After clicking "Calculate your FREE results", Plaintiff was shown a page informing him that he had been matched with Quicken Loans (now known as Rocket Mortgage). *Id.* ¶ 23.

### B.    Rocket Mortgage's Terms of Use.

In addition to agreeing (twice) to LMB's Terms of Use, including the mandatory arbitration provision, in the course of his use of LMB's service, Plaintiff also agreed to Rocket Mortgage's Terms of Use, which also contained a mandatory arbitration provision. Specifically, multiple webpages that Plaintiff completed at LowerMyBills.com contained hyperlinks to Rocket Mortgage's Terms of Use. The words "Terms of Use" were a hyperlink and underlined. Viner Decl. ¶ 24, Ex. 1 pp. 10, 13, 17. Clicking on the words "Terms of Use" takes the consumer to Rocket Mortgage's full-text Terms of Use. There, consumers like Plaintiff can review the complete Rocket Mortgage Terms of Use before using LMB's services. *Id.* ¶ 24.

Rocket Mortgage's Terms of Use included the following mandatory arbitration provision:

> You agree that these Terms of Use shall be governed by and construed in accordance with the laws of the State of Michigan, without giving effect to any principles of conflicts of law. ***You understand and agree to resolve through final and binding arbitration the following claims, disputes, or controversies arising between you and Rocket Mortgage, LLC, and its parents, affiliates, subsidiaries, or related companies: all claims, disputes, or controversies arising from the Telephone Consumer Protection Act of 1991 ("TCPA")***, or state law claims similar to the TCPA. ***You will arbitrate TCPA claims between you and Rocket Mortgage at a location the arbitrator will determine in compliance with Rocket Mortgage's Governing Law provision***. ***The arbitrator, not the court, will resolve the issue of arbitrability***. . . . ***The parties voluntarily and knowingly waive any right they have to a jury trial for TCPA-related matters which, based on the above, will be arbitrated.***

Courtney Decl. Ex. 1 p. 12 (emphases added).

## III.   THE LAWSUIT

After Plaintiff entered his information, agreed to LMB's and Rocket Mortgage's Terms of Use, and consented to be contacted, LMB provided Rocket Mortgage with the information Plaintiff had entered on LMB's website.  Viner Decl. ¶¶ 7, 23; Courtney Decl. ¶ 7.  After receiving this information from LMB, Rocket Mortgage in turn, contacted Plaintiff by text message.  Courtney Decl. ¶ 8.

On December 27, 2021, despite having agreed to arbitrate any TCPA claims against Rocket Mortgage arising from or relating to his use of LMB's services (and to arbitrate on an individual, non-class basis), Plaintiff filed a class action complaint alleging violations of the TCPA's Do-Not-Call provision (47 U.S.C. § 227(c)(5)) and its implementing regulation (47 C.F.R. § 64.1200(c)(2)).  He claims that, by sending text messages to his cell phone in response to his submission on LMB's website, Rocket Mortgage violated the Do-Not-Call provision.  Compl. ¶¶ 19-20.

## <u>LEGAL STANDARD</u>

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC*, 563 U.S. at 339 (citations and internal quotation

marks omitted).  In passing the FAA, Congress established a strong federal policy in favor of arbitration, "notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) ("[A] party may not renege on [an agreement to arbitrate] absent the most extreme circumstances.").  In short, federal law mandates that federal courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.  "The party opposing arbitration has the burden to show that the agreement is not enforceable."  *E.g.*, *Blanton v. Domino's Pizza Franchising LLC*, No. 18-13207, 2019 WL 5543027, at *1 (E.D. Mich. Oct. 25, 2019), *aff'd*, 962 F.3d 842 (6th Cir. 2020).

## ARGUMENT[3]

The record evidence demonstrates that Shirley entered into valid and enforceable arbitration agreements with LMB and Rocket Mortgage when he

---

[3] While this Motion is directed to Shirley's individual claim, Rocket Mortgage expressly reserves its rights (i) to compel arbitration of the claims of some or all of the members of any class that may be certified in this action, and (ii) to demonstrate that arbitration agreements and class action waivers operate to preclude putative class members from participating in this lawsuit.  These and other similar issues are premature at this initial stage of the litigation, where no class has been certified and plaintiff has not filed any motion for class certification. *See Currithers v. FedEx Ground Package Sys., Inc.*, 2012 WL 458466, at *8 (E.D. Mich. Feb. 13, 2012).

voluntarily used LMB's services to request information about a mortgage refinance. When considering a motion to compel arbitration, "the Court 'must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement.'" *Jones-Bey v. JPay Inc.*, No. 17-12545, 2019 WL 6337770, at \*2 (E.D. Mich. Oct. 10, 2019) (quoting *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008)), *report and recommendation adopted*, No. 17-12545, 2019 WL 6329666 (E.D. Mich. Nov. 26, 2019).  Once Rocket Mortgage shows that the parties agreed to arbitrate, it is Shirley's burden to show that his agreement was unenforceable.  *Blanton*, 2019 WL 5543027, at \*1.

I.  **THE LMB TERMS OF USE CONSTITUTE A VALID ARBITRATION AGREEMENT THAT REQUIRES PLAINTIFF TO ARBITRATE (NOT LITIGATE) THE TCPA CLAIMS HE PURPORTS TO PURSUE IN THIS LAWSUIT.**

The record evidence demonstrates that Shirley entered into a valid arbitration agreement when he twice agreed to LMB's Terms of Use and voluntarily used LMB's services to request information about a mortgage refinance from Rocket Mortgage (and others).  "Because arbitration agreements are fundamentally contracts" they are subject to "the applicable state law of contact formation." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011) (citation omitted).  And "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the

10

principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). Indeed, "clickwrap agreement[s]" like LMB's Terms of Use, which "present[] the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the [] agreement by clicking on an icon," are regularly enforced. *Lazo v. Redcliffe Med. Devices, Inc.*, No. 21-10336, 2021 WL 5536319, at *4 n.3 (E.D. Mich. Oct. 18, 2021); *accord e.g.*, *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275 (M.D. Tenn. 2020) ("Federal courts have consistently upheld clickwrap agreements.").

## A. Acknowledging An Agreement Forms A Contract.

Under the law of California (LMB's place of business and the place where the parties agree the agreement was entered into, Viner Decl. Ex. 2 ¶ 2), clickwrap agreements like LMB's Terms of Use are enforceable where: (i) "the user is required to affirmatively acknowledge the agreement before proceeding with use of the website," or (ii) "the website puts a reasonably prudent user on inquiry notice of the terms of the contract," which "depends on the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1176–77. The record evidence demonstrates that both of these requirements for enforceability are met here. The result would be the same under Michigan law. *Jones-Bey*, 2019 WL 6337770, at *5.

## B. Plaintiff Twice Affirmatively Agreed to LMB's Terms of Use After Being on Inquiry Notice of Them.

Here, the factual record demonstrates that Shirley twice affirmatively

acknowledged his agreement to LMB's Terms of Use, including the mandatory arbitration provision, during his use of LMB's services.  Specifically, on August 15, 2021, Shirley visited LowerMyBills.com.  There, Shirley voluntarily filled out informational forms containing, among other things, his phone number and property address.  Viner Decl. ¶ 9; Tayman Decl. Ex. 1.  In addition, Shirley also voluntarily clicked both the "Calculate" and "Calculate your FREE results" buttons on two different pages to confirm his agreement to LMB's Terms of Use.  Viner Decl. ¶¶ 15, 17.  Those Terms of Use set out "the terms and conditions applicable to [his] use of the LMB Website."  *Id.* Ex. 2 p. 1.  And the evidence demonstrates that LMB's website expressly disclosed, in multiple places, that clicking on those buttons confirmed Plaintiff's agreement to LMB's Terms of Use.  Viner Decl. ¶¶ 16, 18. Plaintiff thus affirmatively acknowledged his agreement to LMB's Terms of Use multiple times as part of his use of LMB's website and services.

Under similar circumstances, federal courts consistently have held that such an affirmative acknowledgement results in a valid contract.  Indeed, the LMB Terms of Use were twice upheld and enforced by the U.S. District Court for the Central District of California in Orders from two different judges granting defendants' motions to compel arbitration.  *Rodriguez v. Experian Servs. Corp.*, No. 15-03553 (C.D. Cal. Oct. 5, 2015), ECF No. 43; *Hill v. ActiveProspect, Inc.*, No. 20-01351 (C.D. Cal. July 16, 2021), ECF No. 90.  In both cases, the district court compelled

arbitration based on this same agreement and the consumer's agreement to it by clicking the submission buttons on LMB's website. This Court should do the same.

This conclusion is reinforced by the fact that the prominent and repeated, express disclosures on LMB's website put Plaintiff on reasonable notice that clicking the "Calculate" and "Calculate your FREE results" buttons constituted his agreement to LMB's Terms of Use. Specifically, the record evidence demonstrates that (a) LMB's Terms of Use were hyperlinked and expressly referenced on multiple pages of LowerMyBills.com website, (b) the hyperlinks took users like Plaintiff to the full text of LMB's Terms of Use including the mandatory arbitration provision; and (c) LMB's website contained express disclosures that made clear to Shirley (and other users) that by clicking the "Calculate" button on one page and the "Calculate your FREE results" button on another page, Plaintiff was agreeing to the Terms of Use. Viner Decl. ¶¶ 16, 18. Plaintiff thus "had the opportunity to review the relevant terms of the hyperlinked agreements, and the existence of the relevant contracts was made conspicuous" to him on LMB's website. *See Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1197 (N.D. Cal. 2015), *aff'd in part, rev'd in part, remanded*, 836 F.3d 1102 (9th Cir. 2016). In addition, Plaintiff was "required to affirmatively acknowledge the agreement before proceeding with use of" LMB's referral services. *Nguyen*, 763 F.3d at 1176–77. And Plaintiff was also "on inquiry notice of the terms of the contract" because "the design and content of the website and the agreement's

13

webpage" expressly disclosed the Terms of Use in advance and made them available to Plaintiff for review by hyperlink before he chose to use LMB's services. *Id.*

Under similar circumstances, federal courts routinely enforce arbitration agreements in website terms of use. In *Graf v. Match.com, LLC*, No. 15-3911, 2015 WL 4263957 (C.D. Cal. July 10, 2015), for example, the court ruled that website users agreed to an arbitration provision in the Terms of Use "when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review." *Id.* at *4. Likewise, in *Peter v. DoorDash, Inc.*, the court found plaintiff had agreed to arbitrate his claims because he was on "inquiry notice" of DoorDash's terms of use. To place his order, the plaintiff "clicked a 'Sign Up' button" and "[d]irectly below that button was a statement reading: 'By tapping Sign Up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement.'" 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020). Similar to here, "[t]he words 'Terms and Conditions' appeared in blue text and were hyperlinked to the DoorDash Terms and Conditions in effect at the time." *Id.*; *see also Tompkins v. 23andMe, Inc.*, No. 13-05682, 2014 WL 2903752, at *7–9 (N.D. Cal. June 25, 2014) ("Plaintiffs received adequate notice" when "each named Plaintiff clicked a box or button that appeared near a hyperlink to the [Terms of Service] to indicate

14

acceptance"), *aff'd*, 840 F.3d 1016 (9th Cir. 2016).  The same circumstances as in *DoorDash* and *Match.com* are present here, and so this Court should likewise not hesitate to conclude that (a) Plaintiff affirmatively agreed to LMB's Terms of Use, (b) LMB's website put him on reasonable inquiry notice of the Terms of Use, and (c) clicking the "Calculate" and "Calculate your FREE results" constituted Plaintiff's agreement to the Terms of Use, including the mandatory arbitration provision.

### C.     Rocket Mortgage Is Entitled To Enforce the LMB Terms of Use.

Rocket Mortgage is entitled to enforce the mandatory arbitration provision in LMB's Terms of Use.  "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citation omitted).  California law allows nonsignatories to enforce an arbitration agreement against a signatory as a third-party beneficiary, or pursuant to equitable estoppel principles.  *See Gilbert v. Bank of Am.*, No. 13-01171, 2015 WL 12953229, at *4 (N.D. Cal. Jan. 12, 2015); *Nguyen v. Tran*, 68 Cal. Rptr. 3d 906, 909–910 (Cal. Ct. App. 2007).  Both circumstances are present here.

### i.     Rocket Mortgage Is a Third-Party Beneficiary.

First, Rocket Mortgage is entitled to enforce the arbitration agreement against Shirley because it is a third-party beneficiary of the agreement between Shirley and

LMB. A nonsignatory may assert rights as a third-party beneficiary "if the parties to the agreement intended the contract to benefit the third party." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013). "When an arbitration clause provides that it covers claims involving particular parties, the agreement has been made expressly for the benefit of those parties." *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x 187, 188 (9th Cir. 2021). Here, the Terms of Use were expressly intended to benefit Rocket Mortgage. The arbitration agreement in the LMB Terms of Use requires arbitration of "ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS . . . <u>AFFILIATES</u>, SUBSIDIARIES, OR <u>RELATED COMPANIES</u>." Viner Decl. Ex. 2 ¶ 2 (emphases added). This language is unambiguous—the parties clearly intended that the arbitration agreement would benefit not only LMB, but all of its affiliates and related companies. Rocket Mortgage is such a company because it is an LMB affiliate and shares the same parent company as LMB, RKT Holdings, LLC. *Id.* ¶ 4. *Hajibekyan, LLC*, 839 F. App'x at 188 (finding non-signatory affiliate was an intended third-party beneficiary because arbitration agreement encompassed "any claim, dispute or controversy . . . between me and you or your employees, officers, directors, *affiliates*, successors, assigns" (emphasis in original)); *see also Lei v. Amway Corp.*, No. 14-04022, 2014 WL 12596787, at *11 (C.D. Cal. July 23, 2014); *Sun Moon Star Advanced Power, Inc. v. Chappell*, 773 F. Supp. 1373, 1376 (N.D. Cal. 1990) ("whether companies

are affiliates depends upon finding that the companies are owned by the exact same individuals."); Affiliate Definition, *Black's Law Dictionary* (10th ed. 2014).

That Rocket Mortgage is an intended third-party beneficiary of the arbitration agreement is reinforced by the facts that (i) the LMB online submission form Shirley completed expressly stated that "[d]ata is collected by LowerMyBills on behalf of Rocket Mortgage"; (ii) Shirley was informed that he was matched to Quicken Loans (n/k/a "Rocket Mortgage"); and (iii) Rocket Mortgage is expressly identified as part of the LMB Provider Network and in the Terms of Use as an entity which may contact Plaintiff with mortgage refinance information.  Viner Decl. ¶¶ 23-25.  Where the Plaintiff's claims arise from his use of LMB's services and LMB's website and Terms of Use expressly disclosed that it may provide information to Rocket Mortgage in connection with the LMB services agreed to and requested by Plaintiff, there can be no genuine dispute that the arbitration provision was intended to (and expressly does) benefit Rocket Mortgage.  *See, e.g.*, *Ege v. Express Messenger Sys. Inc.*, 745 F. App'x 19, 20 (9th Cir. 2018) (defendant was third-party beneficiary where "[plaintiffs'] performance under the agreements necessarily and directly benefited [defendant]"); *Labajo v First Int'l Bank & Tr.*, No. 14-00627, 2014 WL 4090527, at *7 (C.D. Cal. July 9, 2014).

As it is an actual and intended third-party beneficiary of the arbitration agreement between LMB and Shirley, Rocket Mortgage is entitled to enforce that

agreement. *See Ege*, 745 F. App'x at 20.

### ii. Shirley Is Estopped From Denying Application Of The Agreement.

Rocket Mortgage is also entitled to enforce the arbitration agreement under the principles of equitable estoppel. A nonsignatory may enforce an arbitration agreement "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract." *Kramer*, 705 F.3d at 1128–29 (citation and internal quotation marks omitted).

Here, Shirley's TCPA claim against Rocket Mortgage is "intimately founded in and intertwined with" his use of LMB's services, consent to calls from Rocket Mortgage, and agreement to LMB's Terms of Use. Shirley gave his consent to be contacted by Rocket Mortgage by phone, text, or email during his August 2021 visit to LowerMyBills.com. *See supra* p. 5. He now claims that Rocket Mortgage contacted him illegally. Compl. ¶ 5. Resolution of Shirley's claim thus necessarily requires this Court to consider questions that are "intimately . . . intertwined" with Shirley's agreements to LMB's TCPA consent disclosures on the LMB website and in LMB's Terms of Use.

Shirley's TCPA claim, therefore, cannot be separated from the Terms of Use, and the arbitration provision in the LMB Terms of Use must be enforced. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993)

("The nexus between Sunkist's claims and the license agreement, as well as the integral relationship between SSD and Del Monte, leads us to the conclusion that the claims are 'intimately founded in and intertwined with' the license agreement."), *rehearing & rehearing en banc denied*, 20 F.3d 1176 (11th Cir. 1994); *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases where "a signatory was bound to arbitrate with a nonsigatory … because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ….'" (citation omitted)).

Further, the arbitration agreement should be enforced as a matter of equity. After submitting his information, and consistent with LMB's disclosure about its services, Shirley was matched with providers of mortgage services and received mortgage loan refinance information. Viner Decl. ¶ 23; Courtney Decl. ¶ 8. Shirley cannot take advantage of the benefits of contracting with LMB, but then seek to avoid the arbitration agreement. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (citation and internal quotation marks omitted).

**D.    While the Issue is Expressly Reserved to the Arbitrator, Shirley's Dispute Does Not Fall Outside the Arbitration Agreement.**

As a valid agreement to arbitrate enforceable by Rocket Mortgage exists here,

19

the only remaining question is whether Plaintiff's claims here fall within the substantive scope of the arbitration provision.  Under the express terms of the arbitration agreement, however, that question is reserved for the arbitrator. Specifically, the Terms of Use require that "ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT."  Viner Decl. Ex. 2 ¶ 2.  As a matter of law, when the parties have contracted to delegate the arbitrability determination to an arbitrator, courts are not permitted to "short-circuit the process and decide the arbitrability question themselves." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28 (2019).  Therefore, because there is a valid arbitration agreement that Rocket Mortgage is entitled to enforce, this Court should compel arbitration and permit the arbitrator to resolve any disputes about arbitrability.

Even assuming this Court may properly consider the arbitrability question, the LMB Terms of Use confirms that it unquestionably "encompasses the dispute at issue."  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). That provision broadly covers:

> ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION.

20

Viner Decl. Ex. 2 ¶ 2. Agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching." *Chiron*, 207 F.3d at 1131. Shirley's TCPA claim against an LMB affiliate and related entity falls squarely within this broad agreement to arbitrate "ALL CLAIMS," including federal statutory claims against LMB and its affiliates. *See Mohamed*, 109 F. Supp. 3d at 1204 ("[T]he party opposing arbitration . . . bears the burden of proving any defense."). Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

## II.   THE ROCKET MORTGAGE TERMS OF USE CONSTITUTE A VALID ARBITRATION AGREEMENT WITH PLAINTIFF THAT ALSO REQUIRE HIM TO ARBITRATE (NOT LITIGATE) THE TCPA CLAIMS HE PURPORTS TO PURSUE IN THIS LAWSUIT.

The record evidence demonstrates that Shirley also entered into a second valid arbitration agreement with Rocket Mortgage that covers this lawsuit when he voluntarily used LMB's services to request information about a mortgage refinance.

Michigan law governs the enforceability of Rocket Mortgage's Terms of Use.[4]  Internet agreements such as the Rocket Mortgage Terms of Use, known as "browsewrap" or hybrid "clickwrap/browsewrap" agreements, are enforceable as contracts under Michigan law if the party on the webpage had actual or constructive

---

[4] Under Michigan law, courts generally honor choice of law provisions. *See Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 122–25 (Mich. 1995). Rocket Mortgage's Terms of Use state that they "shall be governed by and construed in accordance with the laws of the State of Michigan." Courtney Decl. Ex. 1 p. 12.

notice of the agreement *or* "if Defendant provided reasonable notice of the []
agreement." *Hearing Consultants v. J2 Glob. Commc'ns*, No. 14-3540, 2015 Mich.
Cir. LEXIS 133, at *4–5 (Mich. Cir. Ct. Dec. 26, 2015); *see also Anderson*, 490 F.
Supp. at 1274.

Here, the record evidence is that Shirley was presented with Rocket
Mortgage's Terms of Use on three different pages of the submission form he filled
out at LowerMyBills.com to request information from Rocket Mortgage (and others)
regarding a mortgage refinance. Viner Decl. ¶ 24. The Rocket Mortgage Terms of
Use were underlined and hyperlinked on each such page, and Shirley had the
opportunity to review those terms, including the arbitration clause, with one click
before clicking the submissions at LowerMyBills.com.

Courts have enforced terms of use similar to those presented to Shirley as
valid contracts. In *Hubbert v. Dell Corp.*, "[t]o make their purchases, each of the
plaintiffs completed online forms on five of the defendant's Web pages [and] [o]n
each of the five Web pages, the defendant's 'Terms and Conditions of Sale' were
accessible by clicking on a blue hyperlink." 835 N.E.2d 113, 118 (Ill. App. Ct. 2005)
(enforcing arbitration provision in website's terms of use). Like in *Hubbert*, on three
of the forms Shirley completed, Rocket Mortgage's "Terms of Use" were accessible
by hyperlink. *See also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y.
2012) (enforcing terms of use hyperlinked on webpage); *Hearing Consultants*, 2015

22

Mich. Cir. LEXIS 133, at \*4–5; *cf. Anderson*, 490 F. Supp. at 1276 (compelling arbitration when plaintiff had not read terms of use; "[w]ith just the single click of a mouse before placing his order, [plaintiff] would have been able to access the Terms of Use, as well as the Arbitration Clause.").

As the Rocket Mortgage Terms of Use constitute a valid agreement to arbitrate between Plaintiff and Rocket Mortgage, the only remaining question is whether Plaintiff's claims here fall within the substantive scope of the arbitration provision. As with the arbitration provision in the LMB Terms of Use, that question is reserved for the arbitrator in Rocket Mortgage's Terms of Use. *Henry Schein, Inc.*, 139 S Ct. at 527–28; Courtney Decl. Ex. 1 p. 12. Therefore, because there is a valid arbitration agreement between Rocket Mortgage and Plaintiff, this Court should compel arbitration and permit the arbitrator to resolve any disputes about arbitrability.

Even if this Court may properly consider the arbitrability question, however, the arbitration agreement confirms that "the specific dispute falls within the substantive scope of that agreement." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (citation omitted). The provision specifically covers "all claims, disputes, or controversies arising from the Telephone Consumer Protection Act of 1991 ("TCPA"). . . The parties voluntarily and knowingly waive any right they have to a jury trial for TCPA-related matters which, based on the above, will be arbitrated." Courtney Decl. Ex. 1 p. 12. Shirley's TCPA claim against Rocket

Mortgage falls explicitly within this agreement to arbitrate.

## **CONCLUSION**

For the foregoing reasons, Rocket Mortgage respectfully requests that this Court compel Shirley's individual claim to arbitration and dismiss the Complaint.

<div style="margin-left:40%">

Respectfully submitted,

/s/ *W. Kyle Tayman*

W. Kyle Tayman
Brooks R. Brown
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com

Jeffrey B. Morganroth (P41670)
jmorganroth@morganrothlaw.com
MORGANROTH AND MORGANROTH PLLC
344 North Old Woodard Avenue, Suite 200
Birmingham, MI  48009
Tel.: +1 248 864 4000
Fax: +1 248 864 4001

*Counsel for Rocket Mortgage, LLC*

</div>

Dated:  February 28, 2022

## **LOCAL RULE CERTIFICATION**

I, W. Kyle Tayman, certify that Quicken Loans' Motion to Compel Arbitration and Dismiss the Complaint complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).  I also certify that it is the appropriate length pursuant to Local Rule 7.1(d)(3)(a).

/s/ *W. Kyle Tayman*
W. Kyle Tayman

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 28, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *W. Kyle Tayman*
W. Kyle Tayman