## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Dustin Shirley, *on behalf of himself and all others similarly situated*, | Civil Action No.: 2:21-cv-13007-SFC-KGA |
| Plaintiff, | |
| v. | |
| Rocket Mortgage, LLC, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS <u>THE COMPLAINT</u>

## ISSUE PRESENTED

1.      Whether the LowerMyBills.com webpages would put a reasonably prudent user on inquiry notice of terms and conditions containing an arbitration clause sufficient to bind the user.

## MOST APPROPRIATE AUTHORITIES

1.    *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014);

2.    *Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 3621830 (N.D. Cal. Aug.

      16, 2021);

3.    *Shultz v. TTAC Publ'g, LLC*, 2020 WL 6937818 (N.D. Cal. Oct. 26, 2020).

## **INTRODUCTION**

Defendant Rocket Mortgage's ("Rocket Mortgage" or "Defendant") motion contends that Plaintiff, through using the webpages of LowerMyBills.com ("LMB"), was put on inquiry notice of terms and conditions containing an arbitration clause. Defendant is wrong. "[C]onsumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). As a result, courts "decline to enforce agreements where users must 'parse through confusing or distracting content and advertisements' to find the terms." *See Shultz v. TTAC Publ'g, LLC*, 2020 WL 6937818, at *3-4 (N.D. Cal. Oct. 26, 2020) (quoting *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019)) (Plaintiff was "not bound by the Terms and Conditions generally, or the arbitration provision more specifically" where "the design and content of the checkout process distracts users from recognizing the existence of, and need to review, the Terms and Conditions, and the hyperlink was not conspicuous enough to put Plaintiff on inquiry notice.").

Here, Rocket Mortgage cannot satisfy its burden because the webpages it submits are cluttered with distracting promotional material; the references to the Terms of Use are buried between paragraphs of illegible fine print; the fine print is overshadowed by other nearby language and images displayed in much larger, colorful font; and the overall design and aim of the website is to encourage

consumers to submit personal information while distracting them from the fact that by doing so, they are inadvertently agreeing to Rocket Mortgage and its affiliates' Terms of Use. *See, e.g., Burzdak v. Universal Screen Arts, Inc.*, 2021 WL 3621830, at *4-6 (N.D. Cal. Aug. 16, 2021) (denying motion to compel arbitration because website failed to provide users with inquiry notice of terms and conditions); *Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *3 (S.D. Fla. July 27, 2021) (same); *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021) (same); *Berman v. Freedom Fin. Network, LLC*, 2020 WL 5210912, at *3-4 (N.D. Cal. Sept. 1, 2020) (same).

## BACKGROUND

### A. Plaintiff's Claims

On December 27, 2021, Plaintiff initiated this action on behalf of himself and all similarly situated consumers based on Rocket Mortgage's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").  Plaintiff alleges that Rocket Mortgage placed repeated telemarketing text messages to Plaintiff's cellular telephone advertising Rocket Mortgage promotions and services, despite the fact that Plaintiff's telephone was registered on the national do-not-call registry and despite Plaintiff asking Rocket Mortgage repeatedly to 'stop' messaging

him.[1] *See* Dkt. No. 1; 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

On February 28, 2022, Rocket Mortgage filed its Motion to Compel Arbitration and Dismiss the Complaint. (Dkt. No. 9).  On the same day, Rocket Mortgage filed a separate Motion to Dismiss under Rule 12(b)(6). (Dkt. No. 10).

**B. The Alleged Arbitration Agreements**

   *i.    The LMB Website*

Rocket Mortgage submits a Declaration from Mitchell Viner, the "General Counsel of LMB OpCo, LLC, which is the parent company of LMB Mortgage Services, Inc. d/b/a LowerMyBills.com." (the "Viner Decl.").  Mr. Viner declares that LMB and Rocket Mortgage are "affiliated companies"  and that LMB operates a website, "LowerMyBills.com," that provides a "referral service" for consumers interested in "seeking home mortgage and refinance loans." Viner Decl. ¶ 4.   For those consumers who submit certain information on the LowerMyBills.com website (the "LMB Website"), LMB purports to "match the consumer to one or more mortgage loan providers that partner with LMB and provide the partner(s) with the information the consumer submitted at LowerMyBills.com." *Id.* ¶ 7.

Mr. Viner declares that Plaintiff submitted information on the LMB Website

---

[1] Plaintiff is filing a First Amended Complaint, pursuant to the Court's March 3, 2022, Order (Dkt. No. 11).

on August 15, 2021. Viner Decl. ¶¶ 8-9.[2]  He attaches as <u>Exhibit 1</u> to his Declaration "true and correct copies of screenshots reflecting the website flow and information entry process that would have been presented to a consumer who (like Shirley) navigated to the LowerMyBills.com website on August 15, 2021."   Viner Decl. ¶ 13. According to Mr. Viner, "Shirley visited LowerMyBills.com on a mobile device, and Exhibit 1 hereto displays each page of the website through multiple screenshots."   *Id.*  On the following page is the first page of the LMB Website that Mr. Viner attaches to his Declaration:

---

[2] In other cases, courts have found that Mr. "Viner's assertions are only as reliable as LMB's company records" but that "LMB's company records are not sufficient to establish that plaintiff clicked the relevant buttons, thereby agreeing to arbitration." *Hill v. Quicken Loans Inc.*, 2020 WL 5358394, at *5 (C.D. Cal. Aug. 5, 2020).



*See* Viner Decl., <u>Exhibit 1</u> at p. 3.[3]

Next, Mr. Viner attaches the following screen, which constitutes the first instance where Rocket Mortgage contends the LMB Website provided inquiry notice of the Terms of Use. *See* Viner Decl. ¶¶ 14-15; Def. Mem. at pp. 4-6:

---

[3] Given that the first screen Mr. Viner attaches to his declaration already displays a "50%" completion icon, it appears that there are earlier screens a consumer would see on the LMB website however <u>Exhibit 1</u> to the Viner Decl. does not include these screens.

5

Viner Decl., <u>Exhibit 1</u> at p. 11.  According to Mr. Viner, Plaintiff input responses to

questions in the above screen and then clicked the large green button labeled

"Calculate" Viner Decl. ¶¶ 14-15.   In so doing, Defendant contends that Plaintiff

agreed to arbitrate his TCPA claim against Rocket Mortgage. *See* Def. Mem. at p. 6.

The text below the green 'Calculate' button is written in a light grey font on a

light background and in a significantly smaller font size than the other nearby text

(e.g., the green calculate button, the Quicken Loans logo, the positive customer reviews).  Because the text is not legible when viewing the above image on a computer monitor, Mr. Viner submits a separate "call-out image" of the "'Calculate' submission button and disclosure from page 11 of Exhibit," (Viner Decl. ¶ 15), reproduced below, which is significantly larger than what would appear on a mobile device displaying screen:



Viner Decl., Exhibit 1 at p. 11.  If a consumer "clicked the "Calculate" button on the penultimate screen, then the consumer would be taken to a final webpage." Viner Decl. ¶ 17.  Mr. Viner submits the following "full screen view" of the "Submit page" reproduced on the following page:



Submit page, full screen view

Viner Decl., <u>Exhibit 1</u> at p. 14.  Mr. Viner also submits the following version of the

above image that is a "screenshot split for readability":

Viner Decl., <u>Exhibit 1</u> at p. 15.  Importantly, the red box surrounding the text below

the button appears to have been added by Rocket Mortgage or its counsel after the

fact. *Compare* Viner Decl., <u>Exhibit 1</u> at p. 15 *with id.* at pp. 14 & 16.  The actual

website has no red box setting off the terms.

According to Mr. Viner, the fine print text below the large green button

stating, "Calculate your FREE results" "was an express disclosure from LMB

informing Mr. Shirley that clicking the submission button constituted his agreement

LMB's Terms of Use." Viner Decl. ¶¶ 17-18.  Because the text below "Calculate

your FREE results" is not legible, *see* Viner Decl., Exhibit 1 at p. 15, Mr. Viner

submits the following magnified version of the text:

Viner Decl., Exhibit 1 at p. 16.  Once again, the referenced text is still not legible.

*See id.*  Finally, Mr. Viner submits the following magnified version of the following

text located below the large,  colorful "Quicken Loans" logo and excerpted positive

consumer reviews shown in the above images (*see* Viner Decl., Exhibit 1 at p. 14):

©2000-2021 Rocket Mortgage, LLC (d/b/a Quicken Loans). All rights reserved. Lending services provided by Rocket Mortgage, LLC, a subsidiary of Rocket Companies, Inc. (NYSE: RKT). "Quicken Loans" is a registered service mark of Intuit Inc., used under license.

Rocket Mortgage: E-Mail Policy | Security and Privacy | Disclosures and Licenses | Terms of Use | Communication Opt-Out

Data is collected by LowerMyBills on behalf of Rocket Mortgage. LowerMyBills is not acting as a lender or broker. The information provided by you to LowerMyBills is not an application for a mortgage loan, nor is it used to pre-qualify you with any lender. If you are contacted by a lender or broker advertising within our network, your quoted rate may be higher depending on your property location, credit score, loan-to-value ratio, debt-to-income ratio, and/or other factors. LowerMyBills does not offer its matching services in all states.This loan may not be available for all credit types, and not all service providers in the LowerMyBills network offer this or other products with interest-only options.

LowerMyBills: Terms of Use | Our Privacy | State Privacy Notices | Licenses & Disclosures | Ad Targeting Policy

   

Viner Decl., Exhibit 1 at p. 17.

Defendant contends that Plaintiff agreed to the LMB Terms of Use by clicking the green "Calculate" and "Calculate your FREE results" buttons. *See* Def. Mem. at p. 5.  The LMB Terms of Use contain an arbitration clause. *See* Viner Decl., Exhibit 2.  Defendant also contends that Plaintiff agreed to the Rocket Mortgage Terms of Use because some of the LMB Website screens set forth in Viner Decl., Exhibit 1 "contained hyperlinks to Rocket Mortgage's Terms of Use." Def. Mem. at p. 7. The twelfth page of Rocket Mortgage's Terms of Use contains an arbitration clause. Declaration of Amy Courtney, Exhibit 1 at p. 12.

## ARGUMENT

### A. LEGAL STANDARD

Arbitration is a matter of consent, not coercion and thus a party cannot be

required to so submit to arbitration any dispute which she has not agreed to so submit. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415, 203 L. Ed. 2d 636 (2019). Thus, "[w]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Indeed, this "underlying question of whether the parties agreed to arbitrate is to be 'decided by the court, not the arbitrator.'" *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007).

Rocket Mortgage, as the party seeking to compel arbitration, has the burden of establishing the existence of an enforceable arbitration agreement between it and the compelled party. *See GGNSC Louisville Hillcreek, LLC v. Est. of Bramer by & through Bramer*, 932 F.3d 480, 484 (6th Cir. 2019) ("Establishing that a valid agreement exists is the first step in evaluating a petition to arbitrate, and the initial burden is on the party seeking to enforce the agreement to produce a written, signed document.").

**B. VISITING THE LMB WEBSITE, SUBMITTING BACKGORUND INFORMATON AND CLICKING A BUTTON TO "CALCULATE YOUR FREE RESULTS" DOES NOT CONSITTUE AN AGREEMENT TO ARBITRATE CLAIMS AGAINST ROCKET MORTGAGE**

Even if Plaintiff submitted information and clicked the "Calculate" and "Calculate your FREE results" buttons on the LMB Website, as Rocket Mortgage claims, doing so did not bind Plaintiff to either the LMB or Rocket Mortgage Terms

of Use, nor did it constitute Plaintiff's agreement to arbitrate his TCPA claims against Rocket Mortgage.

"Internet users can form contracts online in a variety of different ways, for example, by clicking on an 'I agree' box after being presented with the website's list of terms and conditions of use ('clickwrap' agreements), by using a website that has its terms and conditions of use posted on the website via hyperlink at the bottom of the screen ('browsewrap' agreements), or by signing up for a website account or service in which the user is told that continued use will act as a manifestation of the user's intent to be bound by various terms ('hybrid design' or 'modified clickwrap' agreements)." *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *3 (C.D. Cal. Jan. 26, 2021). "[E]nforceability 'turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.'" *Id.* (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). Here, Rocket Mortgage argues only that Plaintiff was inquiry notice of the LMB and Rocket Mortgage Terms of Use, not that Plaintiff had any actual notice of the terms, *see* Def. Mem. at pp. 11-15, 22-23, thus the onus is on Rocket Mortgage to show that the LMB Website puts reasonably prudent consumers on notice of the Terms of Use. *See Nguyen*, 763 F.3d at 1179 ( "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers").

"To determine whether a user has inquiry notice of the contract terms, courts

assess 'the design and content of the website and the agreement's webpage.'" *Maree*, 2021 WL 267853, at *3.  Several recent court decisions are instructive and establish that the LMB Website fails to provide inquiry notice of the LMB or Rocket Mortgage Terms of Use.

In *Shultz v. TTAC Publ'g, LLC*, the defendant argued that its website provided sufficient notice of the Terms and Conditions because it contained "the statement 'I agree to the terms and conditions'" which was "placed directly above the 'Complete Purchase' button, and the phrase 'terms and conditions' is hyperlinked in blue" and linked to a complete copy of the referenced terms and conditions. 2020 WL 6937818, at *4 (N.D. Cal. Oct. 26, 2020).  So too, here Rocket Mortgage argues that it provided sufficient notice of the Terms of Use because, in Rocket Mortgage's view, "the record evidence demonstrates that (a) LMB's Terms of Use were hyperlinked and expressly referenced on multiple pages of LowerMyBills.com website, (b) the hyperlinks took users like Plaintiff to the full text of LMB's Terms of Use including the mandatory arbitration provision; and (c) LMB's website contained express disclosures that made clear to Shirley (and other users) that by clicking the 'Calculate' button on one page and the 'Calculate your FREE results' button on another page, Plaintiff was agreeing to the Terms of Use." *See* Def. Mem. at p. 13. Rocket Mortgage also points to the fact that the words Terms of Use were hyperlinked and appear in blue text. *See* Def. Mem. at p. 14.  However, as the *Shultz*

14

court recognized, "'the proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice'" and "'even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.'" *Shultz*, 2020 WL 6937818, at *4 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d at 1178-79. Thus, the Court in *Shultz* considered the website design to determine if the website gave constructive notice and ultimately found that "the webpage design makes it exceedingly difficult to discern the significance of the hyperlink" and thus it denied the defendant's motion to compel arbitration. *Shultz*, 2020 WL 6937818, at *4.

Finding lack of inquiry notice, the *Shultz* Court found that "[t]he phrase 'I agree to the terms and conditions' is in very small text, and is dwarfed by the large and colorful green 'Complete Purchase' button below it." *Id.* Moreover, the Court noted that in that case "[t]o the right of the terms and conditions hyperlink and 'Complete Purchase' button is further promotional material about the soon-to-be-purchased product"; the "advertisement includes a colorful image and several large green checkmarks beside the content included with the purchase" which are "several times larger than the terms and conditions hyperlink, and obscure the import of the checkmark beside the hyperlink." *Shultz*, 2020 WL 6937818, at *4.

The LMB Website suffers from the same defects. The language "By clicking the button above, you agree to . . . the LMB Lending Terms of Use, Privacy Policy

and Consent to Doing Business Electronically," is written in a light grey font against a light background, in an extremely small font size that is dwarfed and overshadowed by the much larger colorful green button stating "Calculate' and the much larger colorful "Featured Provider: Quicken Loans" logo and positive customer reviews below:



*See* Viner Decl., <u>Exhibit 1</u> at p. 11. Indeed, the above disclosure language is not even readable on the full screen version Rocket Mortgage submits, *see id.,* and is only

legible when read on a magnified version of the image, *see id.* at p. 12.

The language below the large colorful "Calculate your FREE results" green button suffers from the same defects; the five paragraphs of text below stating, *inter alia,* "By clicking the button above, you express your understanding and consent, electronically via E-sign to the following: . . . 2. To the LMB Lending Terms of Use, Privacy Policy and Consent to Doing Business Electronically," are written in tiny, single-spaced, light grey font that is overshadowed by the much larger, colorful green button commanding consumers to "Calculate your Free results" button, the larger colorful promotional language noting that the "Featured Provider" is "Quicken Loans," and the prominently placed positive customer reviews. *See* Viner Decl., Exhibit 1 at p. 14.  The same goes for the references to the Rocket Mortgage Terms of Use, which are buried even further below in similar, barely-legible font. *See, e.g., id.* at pp. 14,17; *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002) ("there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there.").

Because "courts often decline to enforce agreements where users must 'parse through confusing or distracting content and advertisements' to find the terms," the *Shultz* found that the website at issue in that case failed to put consumers on inquiry notice of the terms and conditions. *See Shultz*, 2020 WL 6937818, at *4 (collecting Courts of Appeals decisions).  Other courts have consistently reached similar

conclusions. *See, e.g., Goldstein*, 2021 WL 6617447, at *3 (finding lack of inquiry notice where the terms were "*beneath* the large, orange, all-capitalized [button], rather than above it" and "the comparatively miniscule size of the typeface used to notify the purchaser that he is agreeing to certain 'Terms and Policies' and its light grey color render it practically unreadable.") (emphasis in original); *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *4 (C.D. Cal. Jan. 26, 2021) ("unlike the visually-simple design on JUUL's website, Expedia.com's Terms of Use hyperlink appears on a cluttered page nestled between several lines of extraneous, colored and bolded text. Courts have found more conspicuous hyperlinks than Expedia.com's to be insufficient for inquiry notice."); *Berman v. Freedom Fin. Network, LLC*, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1, 2020), *reconsideration denied,* 2020 WL 6684838 (N.D. Cal. Nov. 12, 2020) ("the phrase 'I understand and agree to the <u>Terms & Conditions</u> which includes mandatory arbitration and <u>Privacy Policy</u>' is formatted in black font against a white background which is exceedingly small compared to the larger, more colorful and high-contrast fonts on the rest of the page, making it difficult to read on a large, high-resolution monitor, much less a mobile device."). Here, the overall impression of the LMB Website would lead consumers to click the vibrant "Calculate" or "Calculate your FREE results" buttons while never knowing that the below disclaimers in significantly smaller, barely-legible font subjects them to the LMB and Rocket Mortgage Terms

18

of Use.

In *Burzdak v. Universal Screen Arts, Inc.*, where there was "reference to the Terms of Use in close visual proximity to the 'Submit' button," and the website stated a consumer agreed to the Terms of Use by submitting their email address, the Court found lack of inquiry notice because there was "an obvious enticement and distraction." 2021 WL 3621830, at *4-6 (N.D. Cal. Aug. 16, 2021) (denying motion to compel arbitration). There the website advertised free shipping and was "accompanied by the command 'HURRY!'" *Id.*, at *6. Thus, the "visual prominence – through bolding, a different color, and/or capitalization – is given to other text, including 'Free Shipping,' and thus attention is diverted away from the Terms of Use." *Id.* [4]

The same reasoning holds here. The LMB Website is not a portal through which existing Rocket Mortgage or LMB customers can sign into an existing account. Instead, it is a promotional website that is rife with large, colorful commands to "Calculate your FREE results" and that prominently displays positive customer reviews in larger, colorful font. This language is designed to entice consumers to submit their contact information in order to obtain their "FREE"

---

[4] Moreover, in *Burzdak* although there was "some visual proximity between the Terms of Use and the relevant button ('Submit') . . . the value of the visual proximity is reduced by the fact that the reference to the Terms of Use is buried in a relatively lengthy paragraph" that largely focused on other matters rather than "a short, simple sentence." *Burzdak*, 2021 WL 3621830, at *6. The same is true here where the references to the Terms of Use are buried within lengthy text that primarily addresses unrelated matters. *See* Viner Decl., Exhibit 1 at pp. 11-16.

calculation of how much they can purportedly save on their mortgage, and in turn, distract consumers from the fact that by doing so they are purportedly agreeing to several sets of Terms of Use.  Taken together the LMB Website's design and language "distract the consumer from the content of the screens, including the reference to the Terms of Use" and fail to put the consumer on inquiry notice of the Terms of Use. *Burzdak*, 2021 WL 3621830, at *6 (N.D. Cal. Aug. 16, 2021); *see* Viner Decl., <u>Exhibit 1</u> at p. 11, 14-15; *see also, e.g.*, *Berman*, 2020 WL 5210912, at *3 ("The 'This is correct, Continue!' and 'Continue' buttons plainly refer to the entry of other information on the page, not assent to the Terms & Conditions."); *Sarchi v. Uber Techs., Inc.*, 2022 ME 8, ¶ 35, 268 A.3d 258, 270–71 ("Uber interface Sarchi used to register failed to provide a prudent user with reasonable notice of the Terms" where, *inter alia,* "the focus" of the website was "on entering payment information rather than on the Terms").

Unlike the above cases, the decisions Rocket Mortgage relies on either involved websites that more prominently notified consumers as to how they can agree to the relevant terms and conditions or the decisions did not analyze the design and content of the website in any detail.  For instance, In *Mohamed v. Uber Techs., Inc.*, the "existence of the relevant contracts was made conspicuous in the first application screen which the drivers were required to click through in order to continue using the Uber application (*i.e.,* driving for Uber)" and there was

20

"uncontroverted evidence that [plaintiffs] clicked 'Yes, I Agree.'" 109 F. Supp. 3d 1185, 1197 (N.D. Cal. 2015), *aff'd in part, rev'd in part and remanded,* 836 F.3d 1102 (9th Cir. 2016), and *aff'd in part, rev'd in part and remanded,* 848 F.3d 1201 (9th Cir. 2016).  Likewise, in *Tompkins v. 23andMe, Inc.*, the plaintiffs "clicked 'I ACCEPT THE TERMS OF SERVICE' when creating an account and registering." 2014 WL 2903752, at *7 (N.D. Cal. June 25, 2014), *aff'd,* 840 F.3d 1016 (9th Cir. 2016).  By contrast, here the LMB Website does not direct consumers to click or check off any button stating "I agree" or "I ACCEPT THE TERMS OF SERVICE" or the like.  Instead, the LMB Website only requires that consumers click large green buttons that state "Calculate" or "Calculate your FREE results," and those buttons commanding consumers to "Calculate" their alleged future savings, along with the other prominently displayed customer reviews and promotional materials, do not direct attention to the Terms of Use and instead pose "an obvious enticement and distraction" from the Terms of Use. *See Burzdak*, 2021 WL 3621830, at *6.  The cluttered and distracting design of the LMB Website also makes this case distinguishable from *Peter v. DoorDash, Inc.*, where the Court found that "[t]he screens" at issue were "uncluttered and wholly visible" *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020).

Moreover, Rocket Mortgage cites *Rodriguez v. Experian Servs. Corp.*, 2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) and *Hill v. ActiveProspect, Inc.*, No. 20-

01351 (C.D. Cal. July 16, 2021), ECF No. 90, as two instances where "the LMB Terms of Use were . . . upheld and enforced." Def. Mem. at p. 12.  In *Rodriguez* the Court held that the website at issue provided constructive notice of its Terms of Use because the "website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgment, which stated, 'By clicking the button above ... you agree to our Terms of Use.'" *Rodriguez*, 2015 WL 12656919, at *2.  However, the opinion does not otherwise address the website design; for instance, it does not describe the size or color of the font used for the referenced disclaimers, there is no indication whether, as here, there was other promotional material or images on the website in much larger, colorful font that overshadowed the disclosure and acknowledgement language. *See id.*  Similarly, the *Hill* decision contains no substantive discussion of the layout or content of the referenced website or whether the same is sufficient to put a consumer on constructive notice. *See Hill v. ActiveProspect, Inc.*, No. 20-01351 (C.D. Cal. July 16, 2021), ECF No. 90.[5]  The same is true of *Graf v. Match.com, LLC*, where the Court noted only that users of the website were "required to affirmatively agree to

---

[5] Nor is there any indication as to whether the *Rodriguez* decision, issued in 2015, is addressing a website that bares any resemblance to the LMB Website at issue in Rocket Mortgage's motion to compel arbitration, even though Rocket Mortgage suggests they contain the same or similar LMB Terms of Use. *See id.*; Def. Mem. at p. 12.   That is also the case in *Hill v. ActiveProspect, Inc.*, where "LMB claim[ed] that it neither owns nor operates the Website, and that the Website is instead operated by the company Suited Connector" *Hill v. ActiveProspect, Inc.*, No. 20-01351 (C.D. Cal. July 16, 2021), ECF No. 90 at p. 5 n.1.

the Terms of Use when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review," but the decision did not address the website layout or design, or how the referenced text was displayed in relation to the rest of the website. *See Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015).

## **CONCLUSION**

The LMB Website fails to provide conspicuous notice to consumers that by visiting the LMB Website advertising a way to calculate potential savings from using "the Government GSE's mortgage relief program," submitting background information, and clicking large green buttons stating "Calculate" and "Calculate your FREE results," the consumer is agreeing to Terms of Use buried in fine print at the bottom of the website. Because the website fails to provide inquiry or constructive notice of either the LMB or Rocket Mortgage Terms of Use or the arbitration clauses contained therein, there is no arbitration agreement for Rocket Mortgage to enforce, and the motion to compel arbitration must be denied.

Dated: March 24, 2022

_/s/ Sergei Lemberg_

Sergei Lemberg
slemberg@lemberglaw.com
LEMBERG LAW, LLC

23

43 Danbury Road
Wilton, CT 06897
T: (203) 653-2250
F: (203) 653-3424

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2022, a true and correct copy of the foregoing Motion to Extend was served electronically by the U.S. District Court for the Eastern District of Michigan Electronic Document Filing System (ECF) and that the document is available on the ECF system.


_/s/ Sergei Lemberg_
Sergei Lemberg